# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY M. DANIELS,<br><br>        Plaintiff,<br><br>   v.<br><br>J. MARSHALL, et al.,<br><br>        Defendants.<br>_____/ | CASE NO. 1:02-CV-05880-AWI-SMS-P<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANT MARSHALL'S MOTION FOR SUMMARY JUDGMENT BE GRANTED, AND DEFENDANTS JOHN DOE I AND JANE DOE (AKA THOMPSON) BE DISMISSED FROM ACTION<br><br>(Doc. 72) |

I.    <u>Findings and Recommendations</u>

      A.    <u>Defendant Marshall's Motion for Summary Judgment</u>

            1.    <u>Procedural History</u>

Plaintiff Jeffrey M. Daniels ("plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding plaintiff's original complaint, filed July 22, 2002, against defendants Marshall and John Doe 1 for denial of access to the courts, and against defendant Thompson for acting with deliberate indifference, in violation of the Eighth Amendment.[1] (Docs. 13, 18.) On October 27, 2005, defendant Marshall

///
///

---

[1] John Doe I and Thompson were not identified and served with process. Their status is discussed in subsection B.

1

("defendant") filed a motion for summary judgment. (Docs. 72, 73.) Plaintiff filed an opposition on January 3, 2006.[2] (Docs. 77, 78.)

## 2. Legal Standard

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that

---

[2] Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment by the court in an order filed on April 8, 2003. Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988). (Doc. 17.)

might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the Court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

///
///
///

3.     Undisputed Facts

1. Plaintiff Jeffrey M. Daniels is a California prisoner who is serving a term of twenty years to life following his felony convictions.[3]

2. Plaintiff was confined at the California Correctional Institution (CCI) in Tehachapi, California from November 2, 1994, until September 22, 1998, when he was transferred to Deuel Vocational Institution and then the following day to the Security Housing Unit at California State Prison - Corcoran (CSP-Corcoran).

3. On August 5, 10, and 11, 1998, plaintiff made withdrawals from his trust account, leaving him a balance of $142.42.

4. On August 12, 1998, plaintiff filed a petition for writ of habeas corpus in Daniels v. Carey, No. C 98-3122 SBA (N.D. Cal.) challenging his convictions. Included was a one-page declaration under penalty of perjury stating that he was indigent and unable to pay fees or costs, and asking to proceed in forma pauperis. The clerk of the court advised plaintiff that the in forma pauperis application was deficient because he had used an outdated form, had not supplied a certificate of funds in his trust account signed by a prison official, and had not attached a copy of his prisoner trust account statement showing transactions for the preceding six months. Plaintiff was told to respond to the order and warned that if he did not, his case would be dismissed.[4]

5. Plaintiff made further withdrawals from his trust account balance and on August 25, 1998, the balance was $131.52.

6. On August 19, 1998, plaintiff sent a request for interview to staff in the Inmate Trust Office asking them to complete the certificate of funds to the Northern District and that "if there is $5 on my books, please submit a check or money order" to the court. Staff interviewed him regarding the request on August 25.

---

[3] Plaintiff's opinion that his conviction was not lawful does not bring this fact into dispute. (Opp., Doc. 77, ¶4.)

[4] Plaintiff's attempt to raise a dispute as to this fact on the ground that defendant omitted some information is rejected. Plaintiff's desire to add additional facts or set forth an explanation does not cause the fact as set forth by defendant to be disputed.

4

7. On September 1, 1998, plaintiff signed a request for a thirty-day extension of time to file an in forma pauperis application in the habeas proceeding. Plaintiff explained that he had submitted the certificate of funds to the inmate trust office which had then sent it to defendant, who was on vacation, and that he had sent a second request regarding the application and filing fee, and would file the application and certificate of funds, or send the $5.00 filing fee if he had funds.

8. The next day, staff in the Inmate Trust Office provided plaintiff with the certificate of funds showing that his average balance over the preceding six months was $108.15. The Inmate Trust Office, however, did not send the $5.00 filing fee to the district court.

9. On September 14, 1998, plaintiff filed a request for appointment of counsel with exhibits, a declaration, and an application to proceed in forma pauperis dated September 2, 1998, with a copy of the certificate of funds. The application included a statement that he had "$131" in cash. Trust account records show he had $131.52 in his trust account at the time.

10. On September 15, 1998, plaintiff filed a motion with a copy of the certificate of funds, an inmate trust account statement, and the August 19, 1998, request to the Inmate Trust Office for the certificate of funds or payment of the filing fee, if he had funds. Plaintiff asked that if the filing fee had not been paid, an open-ended extension of time be granted to permit the payment to be made or that he be allowed to proceed without paying the fee.

11. On September 21, 1998, the Northern District denied plaintiff's request for an extension of time and gave him ten days to submit an in forma pauperis application.

12. Plaintiff was transferred from CCI on September 22, 1998, and sent to CSP-Corcoran for housing en route.

13. On October 1, 1998, plaintiff mailed a document to the Northern District advising the court that he was at CSP-Corcoran, did not have his legal property, and did not know whether the filing fee had been paid.

14. On October 15, 1998, the Northern District found that plaintiff had sufficient funds in his account to pay the filing fee, that he realized that he had to do so, and that he was asking for an indefinite extension of time on the ground that he had done all he could to pay the

required fee. The Northern District found that plaintiff had ample time to perfect his filing status and that sixty days had passed since he had been advised to pay the fee or submit a proper in forma pauperis application. The court further found that plaintiff should not have attempted to file in forma pauperis and that his attempt to do so had needlessly delayed the proceeding. The court declined to permit further delay by granting extensions of time with no certain end in sight. The court dismissed the petition for writ of habeas corpus without prejudice to re-filing.[5]

15. On January 6 and February 24, 1999, plaintiff sent documents to the Northern District claiming that he had not received a response to his in forma pauperis application and petition for writ of habeas corpus and asking whether his petition had been dismissed. Plaintiff received a copy of the dismissal order because it was attached to his complaint in this action.[6]

16. Following dismissal of the petition for writ of habeas corpus, plaintiff did not re-file the petition, but he did file five federal civil rights actions and was allowed to proceed in forma pauperis in each one:

   a. Daniels v. Vaughn, No. CV-F-99-6611 AWI SMS P (E.D. Cal.);
   b. Daniels v. Schroeder, No. CV-F-99-6717 OWW SMS P (E.D. Cal.);
   c. Daniels v. Lamarque, No. 02-CV-04816 JSW (N.D. Cal.);
   d. Daniels v. Mandeville, No. C-04-1160 JSW (PR) (N.D. Cal.); and
   e. Daniels v. Wells, No. C-04-1161 JSW (PR) (N.D. Cal.).[7]

///

---

[5] Although plaintiff purports to dispute this fact, the fact is fully supported by a reading of the court's order. Plaintiff's disagreement with the court's order does not bring into dispute this fact.

[6] Plaintiff attempts to dispute this fact by citing to pages nine through thirteen of his complaint. It is not clear what grounds exist to dispute this fact. Defendant has supported the fact with copies of plaintiff's own filings in the Northern District of California, dated January 6 and February 24, 1999. Plaintiff has cited to no specific evidence that brings this fact into dispute. The court declines to speculate as to the basis of plaintiff's dispute. With respect to the receipt of the order, defendant stated only that plaintiff received the order because it was attached to the complaint. Defendant did not state when plaintiff received the complaint. By plaintiff's own admission, he received the order, albeit not when it was originally served. (Comp., ¶27.)

[7] Plaintiff's desire to explain why he did not re-file his petition does not bring into dispute the fact that plaintiff did not re-file it or that plaintiff filed five civil rights actions.

4.      Plaintiff's Claim of Denial of Access to the Courts

In his complaint, plaintiff alleges in relevant part that while he was at CCI, he mailed the United States District Court for the Northern District of California an application to proceed in forma pauperis for filing in his pending habeas action. Plaintiff alleges that he requested leave to proceed in forma pauperis because he had previously submitted a request to defendant Marshall that funds from his account be sent to his sister so that she could purchase law books for him. At the time plaintiff requested leave to proceed in forma pauperis, he was not aware his request that funds be returned to his sister had not been processed.

On August 12, 1998, the court informed plaintiff that his application was deficient because he did not use the correct form, did not submit a certificate of funds completed by a prison official, and did not include a certified copy of his trust account statement. (Comp., Exhibit B.) The court gave plaintiff thirty days in which to respond to the deficiencies. (Id.) On August 19, 1998, plaintiff submitted an Inmate Request for Interview form in which plaintiff requested that the proper form be filled out and that the $5.00 filing fee be sent to the court if plaintiff had the funds available. (Id., Exhibit C.) Plaintiff's request was addressed by John Doe #1 on August 25, 1998. (Id.)

On September 1, 1998, plaintiff mailed a request for an extension of time to the court, and on September 9, 1998, plaintiff sent a notice to the court informing it that he had done all he could do to get the institution to mail the filing fee. On September 22, 1998, plaintiff was placed on a bus for transportation to Pelican Bay State Prison. Plaintiff alleges that he was re-routed to CSP-Corcoran instead, which cut off his contact with the court because he did not have his case number.

On December 23, 1998, plaintiff received his legal property for the first time since his transfer to CSP-Corcoran. Plaintiff alleges that he knew he should be receiving a response from the court concerning his two filings. Since he had not received anything, he appealed to Tom Carrie, Warden of CCI, on February 15, 1999, and asked about any mail received from the court. (Exhibit I.) Plaintiff alleges that Carrie granted the appeal, via a staff member, on February 25, 1999. (Id.) In response to the appeal, plaintiff was provided with mail room records showing that the court sent him letters on September 12, 1998, October 21, 1998, and November 4, 1998. Plaintiff alleges that he did not receive any of the letters. Plaintiff sent the court an inquiry regarding the status of his case

on February 24, 1999. In response, the court sent plaintiff a copy of its October 15, 1998 order dismissing his petition. (Exhibit D.)

Plaintiff alleges that defendants Marshall and John Doe #1 failed to honor his requests to send the court the $5.00 filing fee and/or the appropriate in forma pauperis documents, and as a result, plaintiff's petition was dismissed.

Inmates have a fundamental constitutional right of access to the courts. Lewis v. Casey, 518 U.S. 343, 346 (1996). The right is limited to direct criminal appeals, habeas petitions, and civil rights actions. Id. at 354. Claims for denial of access to the courts may arise from the frustration or hindrance of "a litigating opportunity yet to be gained" (forward-looking access claim) or from the loss of a meritorious suit that cannot now be tried (backward-looking claim). Christopher v. Harbury, 536 U.S. 403, 412-15, 122 S.Ct. 2179, 2185-87 (2002). In this instance, plaintiff's access claim is backward-looking, as plaintiff claims that his pending habeas petition was dismissed as a result of defendant's inaction. To prevail on his claim, plaintiff must show that he suffered an actual injury by being shut out of court. Id. at 415; Lewis, 518 at 351.

The alleged failure of defendant to process plaintiff's request to send funds to his sister in June of 1998, an issue addressed by both defendant and plaintiff, does not provide a basis upon which to impose liability under section 1983 because it did not violate any of plaintiff's rights under federal law. The court at no time made a finding to the contrary. (Doc. 12, 3:5-4:8 & 6:1-3; Doc. 18.) At most, that issue serves to explain why plaintiff allegedly believed he was indigent and requested leave to proceed in forma pauperis in his habeas petition.

Plaintiff was ordered by the Northern District in August of 1998 to cure the deficiencies in his application to proceed in forma pauperis. Plaintiff responded appropriately to the order by requesting that the trust office complete the in forma pauperis paperwork or, if funds existed, send $5.00 to the court. It was the failure to comply with this order that led to the dismissal of plaintiff's habeas petition, and it was failure to process fully plaintiff's request to the trust office that led to the failure of plaintiff to comply with the order. This event, and not the failure of defendant to process plaintiff's earlier request that funds be sent back to his sister, which gives rise to plaintiff's claim of denial of access to the courts.

1  Turning to the relevant part of defendant's motion, the following facts are undisputed.
2  Plaintiff filed a petition for writ of habeas corpus challenging his conviction in the Northern District
3  of California on August 12, 1998 (<u>Daniels v. Carey</u>, No. C 98-3122 SBA (N.D. Cal.)). (Undisputed
4  Fact 4.) With his petition, plaintiff included a request for leave to proceed in forma pauperis. (<u>Id</u>.)
5  On that date, plaintiff was advised by the clerk of the court that the in forma pauperis application was
6  deficient because he had used an outdated form, had not supplied a certificate of funds in his trust
7  account signed by a prison official, and had not attached a copy of his prisoner trust account
8  statement showing transactions for the preceding six months. (<u>Id</u>.; Comp., Exhibit B.) Plaintiff was
9  directed to respond within thirty days and warned that if he did not, his case would be dismissed.
10 (<u>Id</u>.; Comp., Exhibit B.)

11 On August 19, 1998, plaintiff sent a request for interview to staff in the Inmate Trust Office
12 asking them to complete the in forma pauperis paperwork or, if funds existed, send $5.00 to the court
13 via check or money order. (U.F. 6.) Staff interviewed plaintiff regarding the request on August 25,
14 1998. (<u>Id</u>.) On September 1, 1998, plaintiff sent to the Northern District a request for a thirty-day
15 extension of time to file an in forma pauperis application in the habeas proceeding. (U.F. 7.)
16 Plaintiff stated in the request that he had submitted the certificate of funds to the inmate trust office,
17 which had then sent it to defendant Marshall, who was on vacation, and that he had sent a second
18 request regarding the application and filing fee, and would file the application and certificate of
19 funds or send the $5.00 filing fee, if he had funds. (<u>Id</u>.)

20 The next day, staff in the Inmate Trust Office provided plaintiff with the certificate of funds
21 showing that his average balance over the preceding six months was $108.15, but did not send the
22 $5.00 filing fee to the district court. (U.F. 8.)

23 On September 14, 1998, plaintiff filed a request for appointment of counsel with exhibits,
24 a declaration, and an application to proceed in forma pauperis dated September 2, 1998, with a copy
25 of the certificate of funds. (U.F. 9.) The application included a statement that he had "$131" in cash,
26 and trust account records show he had $131.52 in his trust account at the time. (<u>Id</u>.)

27 On September 15, 1998, plaintiff filed a motion with a copy of the certificate of funds, an
28 inmate trust account statement, and the August 19, 1998, request to the Inmate Trust Office for the

9

1  certificate of funds or payment of the filing fee, if he had funds. (U.F. 10.) Plaintiff asked that if the
2  filing fee had not been paid, an open-ended extension of time be granted to permit the payment to
3  be made or that he be allowed to proceed without paying the fee. (Id.)

4  On September 21, 1998, the Northern District denied plaintiff's request for an extension of
5  time and gave him ten days to submit an in forma pauperis application. (U.F. 11.) Plaintiff was
6  transferred from CCI the next day, on September 22, 1998. (U.F. 12.)

7  On October 1, 1998, plaintiff mailed a document to the Northern District advising the court
8  that he was at CSP-Corcoran, did not have his legal property, and did not know whether the filing
9  fee had been paid. (U.F. 13.) On October 15, 1998, the Northern District found that plaintiff had
10 sufficient funds in his account to pay the filing fee, that he realized that he had to do so, and that he
11 was asking for an indefinite extension of time on the ground that he had done all he could to pay the
12 required fee. (U.F. 14.) The Northern District found that plaintiff had ample time to perfect his
13 filing status and that sixty days had passed since he had been advised to pay the fee or submit a
14 proper in forma pauperis application. (Id.) The court further found that plaintiff should not have
15 attempted to file in forma pauperis and that his attempt to do so had needlessly delayed the
16 proceeding. (Id.) The court declined to permit further delay by granting extensions of time with no
17 certain end in sight, and dismissed the petition for writ of habeas corpus without prejudice to re-
18 filing. (Id.) Following dismissal of the petition for writ of habeas corpus, plaintiff did not re-file the
19 petition. (U.F. 16.)

20 Defendant contends that there is no evidence he had any involvement in the Inmate Trust
21 Office's failure to send the $5.00 filing fee to the court, in contravention of plaintiff's written
22 instruction to do so. Defendant further contends that plaintiff can show no actual harm because the
23 petition was dismissed without prejudice to re-filing and defendant's alleged conduct did not prevent
24 him from re-filing the petition.

25 The court finds that defendant has met his initial burden of informing the court of the basis
26 for his motion, and identifying those portions of the record which he believes demonstrate the
27 absence of a genuine issue of material fact. The burden therefore shifts to plaintiff to establish that
28 a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith

Radio Corp., 475 U.S. 574, 586 (1986). As stated above, in attempting to establish the existence of this factual dispute, plaintiff may not rely upon the mere allegations or denials of his pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank, 391 U.S. at 289; Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973).

Plaintiff has not set forth any evidence that defendant Marshall was responsible for failing to send the $5.00 filing fee to the Northern District, in compliance with plaintiff's request submitted August 19, 1998. Plaintiff does not dispute that defendant Marshall was on vacation at the time,[8] that he was interviewed by staff regarding his request on August 25, 1998, or that the Inmate Trust Office failed to send the $5.00 filing fee. (Opp., ¶¶26, 27, 29, 30.) Thus, there is no evidence raising a triable issue of fact concerning whether defendant Marshall caused plaintiff's petition to be dismissed by failing to comply with plaintiff's instruction to send the court the $5.00 filing if funds existed in his account, which they undisputably did. As such, defendant is entitled to judgment as a matter of law on plaintiff's claim against him.[9]

In addition, plaintiff has not set forth any evidence that he lost the ability to pursue a writ of habeas corpus challenging his convictions as a result of the dismissal. It is undisputed that the dismissal was without prejudice to re-filing. (U.F. 25.) Although plaintiff contends that he did not file another petition because he suffered an impediment by not receiving the court's order in the mail, plaintiff received the order in March of 1999. (Opp., ¶41; Comp., ¶16.) Plaintiff has provided no explanation for his failure to re-file his petition upon receipt of the order in March of 1999. The dismissal of plaintiff's petition, alone, is not sufficient to demonstrate the existence of an actual injury because the dismissal was without prejudice to refiling.

///

---

[8] Although plaintiff purports to dispute the fact that defendant was on vacation, a reading of plaintiff's explanation reveals that plaintiff is arguing that defendant was not on vacation in June of 1998, when plaintiff requested that funds be returned to his sister, and that defendant ignored his June request to return the funds. As previously set forth, that issue is not relevant to the issue of whether or not defendant was responsible for failing to mail the court the $5.00 filing fee, in compliance with plaintiff's instruction.

[9] Because of this finding, the court does not reach defendant's argument that he is entitled to qualified immunity.

B.   Dismissal of Defendants Doe I and Thompson

This action is also proceeding against defendant John Doe I for denial of access to the courts and against defendant Thompson for denial of adequate medical care. With respect to John Doe I, plaintiff was notified by the court in its order of March 6, 2003, that the Marshal cannot serve unidentified defendants and that once plaintiff ascertained the identity of Doe I, the court would direct the Marshal to initiate service. (Doc. 13.) With respect to defendant Thompson, it was discovered via the Marshal's attempt to effect service that Thompson did not work at the prison during the events at issue. (Docs. 42, 48.) Plaintiff conceded that he misidentified Thompson, and on June 25, 2004, the court opened discovery for the limited purpose of allowing plaintiff to discover the identity of this doe defendant. (Docs. 44, 48.) On December 22, 2004, the court issued an order opening general discovery in this action. (Doc. 63.) The deadline for the completion of all discovery was July 12, 2005, and the deadline to amend the pleadings was August 12, 2005. (Id.) Plaintiff did not notify the court that he had obtained the identity of either defendant, and the deadlines for the completion of discovery and to amend his complaint to name the doe defendants have passed. Accordingly, pursuant to Federal Rules of Civil Procedure 4(m) and 41(b), the court recommends that the two doe defendants be dismissed from this action, thus concluding this action in its entirety.

C.   Conclusion

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Defendant's motion for summary judgment, filed October 27, 2005, be GRANTED; and

2. Defendants John Doe I and Jane Doe (aka Thompson) be dismissed based on plaintiff's failure to timely obtain their true identities and amend his complaint to name them, thus concluding this action in its entirety.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the

specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:     May 4, 2006**              /s/ Sandra M. Snyder
icido3                                           UNITED STATES MAGISTRATE JUDGE